AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED
MAY 04 2017
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
One iPhone

Case No. 17MJ1318

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One iPhone located at 185 W F Street, San Diego, CA 92101

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC Secs. 952 and 960 | Importation of a Controlled Substance |
| 31 USC Sec. 5332 | Bulk Cash Smuggling |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

[signature]
*Applicant's signature*

Daniel Krall, Special Agent, Homeland Security Investig.
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/4/17

[signature]
*Judge's signature*

City and state: San Diego, California

Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Daniel Krall, being duly sworn, state:

## I. INTRODUCTION

1. I am a Special Agent with Homeland Security Investigations ("HSI"), and have been so employed since December 2006. I am also a "Federal law enforcement officer" within the meaning of Rule 41(a)(2) of the Federal Rules of Criminal Procedure, authorized to request a search and seizure warrant. Prior to becoming a Special Agent with HSI, I worked for the United States Border Patrol as a Border Patrol Agent from 2002-2006.

2. As a HSI Special Agent, my responsibilities include, but are not limited to, the investigation of possible criminal violations of the Bank Secrecy Act (Title 31 of the United States Code), the Money Laundering Control Act (Title 18 of the United States Code), the Controlled Substances Act (Title 21 of the United States Code) and related federal offenses.

3. I have received extensive training in financial investigation techniques and I have a Master's degree in Forensic Science. I have participated in numerous training classes and seminars on financial crimes and asset forfeiture law, including, but not limited to, fraud, money laundering, illegal structuring of financial transactions, black market peso exchange, and Ponzi schemes. I have directed and participated in investigations which involved the use of electronic surveillance techniques, as well as investigated illicit narcotics, controlled substances, money laundering, bulk cash smuggling, and other crimes that have resulted in arrests, indictments, and convictions. During my investigations, I have made numerous criminal arrests, seized evidence of violations of law, and identified and seized monetary assets. I am also a field training agent and advise junior agents on the most effective method of conducting narcotics smuggling and money laundering investigations.

## II. PURPOSE OF AFFIDAVIT

4. This affidavit is in support of an application for a warrant authorizing the search for evidence of violations of Title 31, United States Code, Sections 5332 (Bulk cash smuggling) and 5324 (failing to file a report regarding international monetary instrument transactions), and

Title 21, United States Code, Section 952 ( unlawful importation of a controlled substance), in the following electronic devices:

a. iPhone, more particularly described in Attachment A;

5. Except as otherwise noted, HSI agents or other law enforcement officers have provided me with the information set forth in this affidavit. Unless otherwise noted, whenever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or indirect knowledge of the statement) to whom I have spoken or whose report I have read and reviewed. Likewise, information resulting from surveillance, interviews, or the execution of search warrants, except where otherwise indicated, does not necessarily set forth my own observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance, interviews, or searches.

6. Because this affidavit is being submitted for the limited purpose of obtaining a search and seizure warrant, I have not set forth each and every fact learned during the course of this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for the requested warrant.

**III. STATEMENT OF PROBABLE CAUSE**

7. On March 13, 2017, at approximately 6:07 p.m., Derek Christopher DOOLEY, a United States citizen, attempted to enter the United States at the San Ysidro, California, Port of Entry via vehicle lane 23A. DOOLEY was the driver, sole occupant and the registered owner of a gray 2015 Ford Fusion.

8. A Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) conducting pre-primary roving patrol responded to DOOLEY's Ford after his Narcotic and Human Detection Dog (NHDD) alerted to the vehicle. The CBP CEO then radioed for assistance.

9. A second CBP Officer responded to the scene and asked DOOLEY where he was going, to which he replied Los Angeles, CA. The CBP Officer observed two cardboard boxes located in the rear passenger floor. The CBP Officer asked DOOLEY what they were, to which he

stated products. The CBP Officer asked what type of products to which DOOLEY stated marijuana products. The CBP Officer escorted DOOLEY to the security office and asked if he had anything else to declare other than the marijuana products, to which DOOLEY stated no. The CBP Officer asked DOOLEY if he had any agricultural items and products such as plants, meats, and soil, to which DOOLEY stated no. The CBP Officer asked DOOLEY if he had in excess of $10,000 in currency or other monetary instruments, to which DOOLEY stated not that I know of.

10. A CBP Officer conducted a thorough search of the Ford Fusion in the vehicle secondary lot. The CBP Officer discovered a total of 2,067 THC Vape Vials, 250 THC resin containers and 30 Vape Pens. The CBP Officer also discovered bulk currency in a black bag which totaled $24,790. The CBP Officer took a sample from one of 2,067 vials and the liquid substance field tested positive for the characteristics of THC. The 2,067 THC Vape Vials and the 250 THC resin containers had an aggregate weight of 51.86 kilograms.

11. DOOLEY was arrested and charged with violation(s) of Title 21 USC 952, 960, Unlawful Importation of a Controlled Substance and Title 31 USC 5332, Bulk Cash Smuggling.

12. SA Krall examined DOOLEY's cellular phone and discovered the phone traveled to Oakland, CA and San Jose, CA, on or about March 9, 2017. Paperwork found in DOOLEY's vehicle lists names, numbers, addresses and invoices of numerous marijuana businesses. DOOLEY was in possession of a ledger that listed several businesses including, Harborside, 1840 Embarcadero, Oakland, CA 94606, "Travis" (888) 994-2726. An open source internet search of that business resulted in Harborside Health Center, a medical marijuana company located at 1840 Embarcadero, Oakland, CA 94606, (888) 994-2726.

## IV. PROCEDURES FOR ELECTRONICALLY STORED INFORMATION

13. It is not possible to determine, merely by knowing the cellular telephones make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital

assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

14. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

15. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

IV. **CONCLUSION**

16. Based on the information set forth above, I respectfully submit that there is probable cause to believe that evidence of the criminal offenses listed above may be located on

the cellular phone described in Attachment A. I, therefore, request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Daniel Krall, Special Agent, HSI

SUBSCRIBED and SWORN TO before me this 4th day of May 2017.

KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

One black iPhone, currently located at the Homeland Security Investigation's office at 185 W. F St, Suite 600, San Diego, CA 92101.

**ATTACHMENT B**

The following evidence to be searched for and seized pertains to violations of Title 31, United States Code, Sections 5332 (Bulk cash smuggling) and 5324 (failing to file a report regarding international monetary instrument transactions), and Title 21, United States Code, Sections 952 (importation of a controlled substance):

Communications, records or data, including but not limited to emails, text messages, photographs, audio files, videos or location data:

a. tending to indicate efforts to smuggle bulk cash or monetary instruments from/to Mexico and the United States;

b. tending to indicate knowledge or avoidance of the filing requirements regarding international monetary instrument transactions;

c. tending to indicate efforts to conduct financial transactions on behalf of others;

d. tending to indicate efforts to possess, transport, import, and deliver controlled substances from Mexico to the United States;

e. tending to indicate knowledge of or access to government regulations governing money service businesses;

f. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, phone numbers - that may contain evidence of the crimes listed above;

g. tending to identify co-conspirators, criminal associates, or others involved in the activities described above;

h. tending to identify travel to or presence at locations in furtherance of smuggling bulk cash or monetary instruments from/to Mexico and the United States.

i. tending to identify the user of, or persons with control over or access to, the subject phone.

j. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records or data, listed above.